**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MINISTERIO ROCA SOLIDA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:12-cv-1488-RCJ-VCF |
| ) | |
| UNITED STATES, UNITED STATES FISH ) | **ORDER** |
| AND WILDLIFE SERVICE; and SHARON ) | |
| MCKELVEY in her official and individual ) | |
| capacities, ) | |
| ) | |
| Defendants. ) | |

_____

Currently before the Court are a Motion to Dismiss U.S. Fish & Wildlife Service and Sharon McKelvey in Her Official Capacity (#7), Motion to Dismiss Sharon McKelvey in Her Individual Capacity (#8), Motion to Extend Time (#14), Motion to Dismiss First Amended Complaint (#16), Motion to Dismiss Sharon McKelvey in Her Individual Capacity from the First Amended Complaint (#17), and Motion to Extend Time (#22).

**BACKGROUND**

**I.   Procedural History**

In August 2012, Plaintiff Ministerio Roca Solida (hereinafter "Plaintiff" or "Solid Rock Ministry") filed a complaint for declaratory and injunctive relief, relief under the Federal Tort Claims Act, and other relief against the U.S. Fish & Wildlife Service and Sharon McKelvey in her official and individual capacities. (Compl. (#1)). On November 20, 2012, the U.S. Attorney of Nevada filed a certification of scope of employment for McKelvey pursuant to 28 U.S.C. § 2679(d)(1), thus, substituting the United States as the party defendant. (Certification of Scope of Employment (#5) at 1). The certification stated that, after reading the complaint, the

U.S. Attorney found that McKelvey was acting within the course and scope of her employment as an employee the United States at the time of the incident. (*Id.*). That same day, Defendants filed a motion to dismiss the U.S. Fish & Wildlife Service and Sharon McKelvey in her official capacity (#7) and a motion to dismiss Sharon McKelvey in her individual capacity (#8). In an attempt to address some of the issues in those motions to dismiss, Plaintiff filed a first amended complaint. (Am. Compl. (#12)). Subsequently, Defendants filed motions to dismiss the first amended complaint. (Mot. to Dismiss (#16); Mot. to Dismiss McKelvey (#17)).

## II.   First Amended Complaint

Plaintiff filed a first amended complaint against Defendants United States, U.S. Fish & Wildlife Service, and Sharon McKelvey in her official and individual capacities (collectively "Defendants"). (First Am. Compl. (#12) at 1). The complaint alleged that Plaintiff was a non-profit Christian religious organization that operated a "church camp" in Nye County, Nevada, and that McKelvey was the Ash Meadows Wildlife Refuge Manager. (*Id.* at 2). The complaint alleged jurisdiction under "5 U.S.C. §§ 701, 702, 703 *et seq.*, 28 U.S.C. §§ 1331, 1343(a)(1)(2)(3)(4), 1346(a)(2), 2201, and 2202" for the federal law claims. (*Id.*). The complaint alleged jurisdiction over McKelvey in her individual capacity under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and 28 U.S.C. §§ 1331, 2201. (*Id.*).

The complaint alleged the following facts. (*Id.*). On August 24, 2006, Pastor Victor Fuentes formed and incorporated Solid Rock Ministry in Nevada. (*Id.*). In November 2006, Solid Rock Ministry purchased 40 acres of land in Nye County for $500,000 from a private seller. (*Id.* at 2-3). The parcel had been historically used as a non-religious, recreational camp which Plaintiff converted into a church camp ministry. (*Id.* at 3). Although the parcel was private land, it was located within the boundaries of the Ash Meadows National Wildlife Refuge. (*Id.*). The parcel had vested water rights to a desert stream which had flowed through and across the property before 1881. (*Id.* ). The vested water rights had been established in 1887 and "substantiated . . . through documentation submitted to Nevada's State Water Engineer, Division of Water Resources" on October 10, 2011. (*Id.*). Plaintiff had

used the stream for baptisms, to water animals, and had contributed significantly to an atmosphere for religious meditation and had fed into a recreational pond utilized by the church camp attendees. (*Id.*).

The complaint alleged the following. (*Id.*). On August 4, 2010, Defendants "engaged in a water diversion project that prevented [Plaintiff's] water from entering its property and, instead, diverted said water completely around the confines" of Plaintiff's 40-acre parcel. (*Id.*). McKelvey had undertaken the water diversion project without the requisite permit from the U.S. Army Corps of Engineers. (*Id.* at 4). McKelvey took steps to ensure that regulators–the State Fire Marshall, the State Health Department, and the Nye County Flood Planning Development–would hinder Plaintiff's ability to operate a church camp. (*Id.*). McKelvey undertook the water diversion project (a) pursuant to a water impact statement that she had submitted to the Nevada Division of Water Resources "devoid of any indication that private landowners with vested water rights were situated within the affected land and would be directly impacted and denied access to their vested water rights," and (b) in contravention of the U.S. Fish & Wildlife's own Finalized Comprehensive Conservation Plan and Environmental Impact Statement to "restore the area to its natural historic condition." (*Id.*).

The complaint alleged the following. (*Id.*). On December 16, 2010, the water diversion project was completed and had deprived Plaintiff of its vested water rights including the water used in its baptisms, religious prayer, and meditation. (*Id.*). The diversion project caused the church camp to lose its recreational pond and reduced the utility and value of the 40-acre parcel. (*Id.*). Once Defendants had deprived Plaintiff of its vested water rights, Defendants owed a duty of care to Plaintiff to complete the project in a way that did not damage Plaintiff. (*Id.*). Defendants breached this duty because construction was performed in a defective manner which routed water to the "high side" of Plaintiff's property and into an "artificial channel" incapable of accommodating historic flow capacities. (*Id.* at 4-5). On December 23, 2010, the first day of any measurable, post-diversion rainfall, the newly diverted water overflowed the artificially created channels and flooded portions of the 40-acre parcel as the water made its way back to its historical path. (*Id.* at 5). The flooding resulted in damages of

at least $86,639 to Plaintiff's land, structures, and animals on the church campgrounds. (*Id.*). On December 27, 2010, McKelvey began taking remedial actions to prevent future flooding of the parcel by altering the design of the initial water diversion channel. (*Id.*). On January 30, 2012, Plaintiff filed a "SF 95 claim form" via certified mail with the Solicitor of the U.S. Fish & Wildlife Service/Department of the Interior for Federal Tort Claim Act damages resulting from the defective water diversion project. (*Id.* ).

The complaint alleged four causes of action. (*Id.* at 5-7). In the first cause of action, Plaintiff alleged violation of property rights and liberty interests under the Fifth Amendment. (*Id.* at 5-6). Plaintiff alleged that it was "deprived of its vested water rights and liberty interests in property without due process of law" when Defendants denied it access to its water way via the water diversion project. (*Id.* at 6).

In the second cause of action, Plaintiff alleged violation of free exercise rights under the First and Fifth Amendments. (*Id.*). Plaintiff alleged that it had a constitutional right to conduct baptisms and religious meditation sessions using the water that it had a vested right to under Nevada law. (*Id.*). Plaintiff was deprived of its liberty interest in free exercise of religion without due process when Defendants denied Plaintiff access to its vested water rights via the water diversion project. (*Id.*).

In the third cause of action, Plaintiff alleged negligence under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680. (*Id.* at 6-7). Plaintiff alleged that Defendants had executed the water diversion project in a manner that did not meet their duty of care to Plaintiff which resulted in the flooding of Plaintiff's property resulting in at least $86,639 in damages to Plaintiff's land, structures, and animals. (*Id.* at 7).

In the fourth cause of action, Plaintiff alleged an unconstitutional "taking" of its property under the Fifth Amendment. (*Id.*). Plaintiff alleged that the water diversion project deprived it of its vested water rights, a physical taking, and significantly devalued the remainder of its 40-acre parcel. (*Id.*). Plaintiff noted that the takings jurisdiction of this Court depended on the amount of the taking. (*Id.*). Plaintiff stated that it had filed a complaint in the U.S. Court of Federal Claims and had requested a stay of the proceedings pending certain determinations

4

by this Court.  (*Id.*).

Plaintiff sought the following relief: (a) a declaration that Defendants had violated Plaintiff's constitutional rights to property and due process; (b) an injunction restoring Plaintiff's water to its historical route through the 40-acre parcel and an injunction preventing Defendants from further deprivation of Plaintiff's land and water; (c) a declaration that Defendants had violated Plaintiff's constitutional rights to free exercise of religion; (d) a declaration that Defendants committed tort negligence against Plaintiff and an award of $86,639 plus interest; and (e) a declaration that Defendants water diversion resulted in a taking and an award of money damages.  (*Id.* at 8).

## LEGAL STANDARD

### I. Lack of Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may be described in one of two ways.  *Thornhill Publishing Co., Inc. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir.1979).  It may be described as facial, meaning that it attacks the sufficiency of the allegations to support subject matter jurisdiction.  *Id*.  Or it may be described as factual, meaning that it "attack[s] the existence of subject matter jurisdiction in fact."  *Id*.  Unless subject matter jurisdiction is affirmatively pled, the court will presume that it lacks subject matter jurisdiction.  *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir.1989).  When considering a "facial" attack made pursuant to Rule 12(b)(1), a court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff.  *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989).

### II. Failure to State a Claim

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations.  *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000).  Such allegations must be construed in the light most favorable to the nonmoving party.  *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  In general, the

court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. However, the court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions. *Id.*; *see Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted). To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though a complaint does not need "detailed factual allegations" to pass muster under 12(b)(6) consideration, the factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).

///
///
///
///
///

# DISCUSSION[1]

## I. Motion to Dismiss First Amended Complaint (#16)

The United States, U.S. Fish & Wildlife Service ("Fish & Wildlife"), and Sharon McKelvey in her official capacity move to dismiss all claims for relief in the amended complaint. (Mot. to Dismiss (#16) at 1). Defendants argue that this Court lacks jurisdiction over the takings claim because Plaintiff has not alleged that the takings claim is for $10,000 or less pursuant to the Little Tucker Act, 28 U.S.C. § 1346(a)(2). (*Id.* at 8). Defendants assert that the Court has no jurisdiction to enjoin a taking because the relief is to award just compensation. (*Id.* at 10). Defendants assert that Plaintiff cannot get around jurisdiction by attempting to characterize his takings claim as a claim under the Administrative Procedures Act. (*Id.* at 10-11). Defendants argue that the first and second claims for relief are takings claims with other labels. (*Id.* at 13). Defendants argue that the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, do not waive sovereign immunity. (*Id.* at 14-15). Defendants assert that this Court lacks jurisdiction over the takings claim with respect to Fish & Wildlife and McKelvey because the Tucker Act and Little Tucker Act only confer jurisdiction over claims against the United States. (*Id.* at 15-16). Defendants assert that the Court lacks jurisdiction against Fish & Wildlife and McKelvey in the FTCA claim because the FTCA only allows claims against the United States. (*Id.* at 16). Defendants assert that Plaintiff cannot own title to the desert stream or the portion that allegedly flowed across its property because, in Nevada, water belongs to the public. (*Id.* at 18-19). Defendants assert that Plaintiff fails to state a cause of action with the takings claim because Plaintiff uses conclusory terms such as "vested" and "liberty interest" to assert water rights. (*Id.* at 19). Defendants argue that Plaintiff's negligence claim is conclusory. (*Id.* at 20).

---

[1] Because Plaintiff has filed a first amended complaint, the Court denies the motions to dismiss the original complaint as moot. As such, the Court denies as moot the Motion to Dismiss U.S. Fish & Wildlife Service and Sharon McKelvey in her Official Capacity (#7), Motion to Dismiss Sharon McKelvey in Her Individual Capacity (#8), and Motion for Extension of Time (#14).

The Court grants Defendants' Motion for an Extension of Time (#22) to file replies on the motions to dismiss the first amended complaint.

Defendants assert that Plaintiff only states a negligence/FTCA claim against the United States. (*Id.* at 2 n.2, 20).

In response, Plaintiff concedes that the FTCA claim only lies against the United States. (Opp'n to Mot. to Dismiss (#20) at 3). Plaintiff asserts that it is seeking declaratory relief against all Defendants that their actions were unconstitutional and, on that basis, seeks injunctive relief to restore the water. (*Id.* at 4). Plaintiff argues that due process claims are not subsumed by a claim for takings. (*Id.* at 6). Plaintiff filed an action in the U.S. Court of Federal Claims and asked that court to stay proceedings pending the resolution of Plaintiff's due process claims, free exercise claims, and claims for declaratory and injunctive relief before this Court. (*Id.* at 4).

Defendants filed a reply. (Reply to Mot. to Dismiss (#23)).

### A.     Sovereign Immunity & Jurisdiction

Sovereign immunity shields the United States from suit absent a consent to be sued that is unequivocally expressed. *United States v. Bormes*, __ U.S. __, 133 S.Ct. 12, 16, 184 L.Ed.2d 317 (2012). "A waiver of sovereign immunity means the United States is amenable to suit in a court properly possessing jurisdiction; it does not guarantee a forum." *United States v. Park Place Associates, Ltd.*, 563 F.3d 907, 923 (9th Cir. 2009). Conversely, the mere existence of a forum does not waive sovereign immunity. *Id*. at 924. Although a statute may create subject matter jurisdiction, it may not waive sovereign immunity. *Id*. The Federal Tort Claims Act and the Tucker Act waive sovereign immunity and contain an independent conferral of jurisdiction. *Id*. "Subject matter jurisdiction must exist as of the time the action is commenced." *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988).

In the "sovereign immunity analysis, any lawsuit against an agency of the United States or against an officer of the United States in his or her official capacity is considered an action against the United States." *Balser v. Dep't of Justice, Office of U.S. Tr.*, 327 F.3d 903, 907 (9th Cir. 2003).

*///*

**B.     Takings Claim (Fourth Cause of Action)**

The Tucker Act provides a waiver of sovereign immunity and for jurisdiction in the Court of Federal Claims for certain claims brought against the United States:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1); *see McGuire v. United States*, 550 F.3d 903, 910 (9th Cir. 2008). The Little Tucker Act provides a waiver of sovereign immunity and for concurrent district court jurisdiction over:

> [a]ny . . . civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort . . .

28 U.S.C. § 1346(a)(2). "Read together, these statutes provide for jurisdiction solely in the Court of Federal Claims for Tucker Act claims seeking more than $10,000 in damages, and concurrent district court jurisdiction over claims seeking $10,000 or less." *McGuire*, 550 F.3d at 910-11 (citing *United States v. Hohri*, 482 U.S. 64, 67 n.1, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987)). "Parties may waive their right to receive more than $10,000 in order to satisfy the Little Tucker Act and obtain jurisdiction in the district court." *Park Place Associates*, 563 F.3d at 927. A takings claim falls within the scope of these two acts because it is a claim founded on the Constitution.[2] *McGuire*, 550 F.3d at 911.

Plaintiff's complaint does not establish on its face that this Court has jurisdiction over its takings claim because Plaintiff has not alleged whether its takings claim is for more or less than $10,000. Rather Plaintiff alleges $86,639 in damages for the negligence claim and remains silent about the takings amount. (*See* Am. Compl. (#12) at 7-8). Nevertheless, Plaintiff acknowledges that this Court's jurisdiction is dependent on the amount of the taking but argues that the amount of the taking cannot be precisely ascertained until this Court

---

[2] The Fifth Amendment to the U.S. Constitution provides that no private property shall be taken for public use, without just compensation. U.S. Const. amend. V.

makes a decision on the equitable relief sought.  (*See id.* at 7; Opp'n to Mot. to Dismiss (#11) at 6).  The Court agrees with Plaintiff and finds that it has jurisdiction over the takings claim for equitable relief against the United States, Fish & Wildlife, and McKelvey in her official capacity.  *See generally E. Enterprises v. Apfel*, 524 U.S. 498, 522, 118 S.Ct. 2131, 2145-46, 141 L.Ed.2d 451 (1998) (holding that in certain circumstances declaratory judgment and injunction constitute an appropriate remedy in a takings claim and that it is within the district courts' power to award such equitable relief).

### C.    Due Process Claim (First Cause of Action)

The Court acknowledges that, in certain circumstances, a Fifth Amendment due process claim can stand separately from a Takings Clause claim.  *See Colony Cove Properties, LLC v. City of Carson*, 640 F.3d 948, 960 (9th Cir. 2011) (holding that the Fifth Amendment will preclude a due process challenge only if the alleged conduct is covered by the Takings Clause).  The U.S. Supreme Court has held that the Takings Clause, "expressly requires compensation where government takes private property '*for public use*.'  It does not bar government from interfering with property rights, but rather requires compensation 'in the event of *otherwise proper interference* amounting to a taking.'"  *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 543, 125 S. Ct. 2074, 2084, 161 L. Ed. 2d 876 (2005) (citing *First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.*, 482 U.S. 304, 315, 107 S. Ct. 2378, 2386, 96 L. Ed. 2d 250 (1987)).  "Conversely, if a government action is found to be impermissible–for instance because it fails to meet the 'public use' requirement or is so arbitrary as to violate due process–that is the end of the inquiry.  No amount of compensation can authorize such action."  *Lingle*, 544 U.S. at 543, 125 S.Ct. at 2084.

The Court finds that Plaintiff states a procedural due process claim separate from its takings claim.  Plaintiff appears to argue that Defendants' decision to partake in the water diversion project was made arbitrarily because McKelvey and/or Fish & Wildlife failed to follow its own rules and regulations for making that decision.  (*See* Am. Compl. (#12) at 4). Accordingly, the Court denies Defendants' motion to dismiss the first cause of action.

///

### D. Free Exercise Claim (Second Cause of Action)

The Court notes that neither party sufficiently briefed this claim. As such, the Court denies Defendants' motion to dismiss the second cause of action. Plaintiff alleges that McKelvey engaged in the water diversion project to hinder Plaintiff's ability to operate a church camp and alleged that McKelvey took no such action under the previous owner who did not operate a church camp. (*See* Am. Compl. (#12) at 4). The Court finds that this claim survives the motion to dismiss.

### E. Federal Tort Claims Act (Third Cause of Action)

With respect to this claim, the parties agree that only the United States may be sued under this cause of action. Nevertheless, Defendants seek to dismiss this claim based on Rule 12(b)(6) because Plaintiff cannot own title to the referenced desert stream. (*See* Mot. to Dismiss (#16) at 19). The Court denies Defendants' motion to dismiss. Defendants want Plaintiff to provide evidence on a motion to dismiss establishing its vested water rights over the 40-acre parcel. The Court finds that if Defendants want to establish that Plaintiff does not have the water rights it alleges in the complaint, they may file a motion for summary judgment.

Accordingly, the Court denies Defendants' Motion to Dismiss the First Amended Complaint (#16).

## II. Motion to Dismiss Sharon McKelvey in Her Individual Capacity from the First Amended Complaint (#17)

McKelvey argues that the Court should dismiss the Fifth Amendment takings claim against her because *Bivens* has not been extended to the takings context. (Mot. to Dismiss (#17) at 5). McKelvey also argues that the Court should dismiss the free exercise claim against her because *Bivens* has not been extended to the First Amendment's Free Exercise Clause. (*Id.* at 7). McKelvey asserts that qualified immunity applies to her actions. (*Id.* at 11).

Plaintiff filed a response and McKelvey filed a reply. (Opp'n to Mot. to Dismiss (#19); Reply to Mot. to Dismiss (#24)).

As an initial matter, Plaintiff is only alleging violations of due process, free exercise of religion, and takings against McKelvey in her individual capacity. In a *Bivens* action, a plaintiff

may bring an action for monetary damages against federal agents acting under color of their authority for injuries caused by their unconstitutional conduct. *Vaccaro v. Dobre*, 81 F.3d 854, 856 (9th Cir. 1996). The Court finds that Plaintiff may maintain a *Bivens* action against McKelvey in her individual capacity for due process, free exercise, and takings violations because the U.S. Supreme Court has not explicitly prohibited a *Bivens* action for these violations. Additionally, the Court finds that qualified immunity does not apply. The Court denies the motion to dismiss McKelvey in her individual capacity.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that the original Motion to Dismiss U.S. Fish & Wildlife Service and Sharon McKelvey in Her Official Capacity (#7) is DENIED as moot in light of the First Amended Complaint.

IT IS FURTHER ORDERED that the original Motion to Dismiss Sharon McKelvey in Her Individual Capacity (#8) is DENIED as moot in light of the First Amended Complaint.

IT IS FURTHER ORDERED that the Motion to Extend Time (#14) is DENIED as moot.

IT IS FURTHER ORDERED that the Motion to Dismiss First Amended Complaint (#16) is DENIED.

IT IS FURTHER ORDERED that the Motion to Dismiss Sharon McKelvey in Her Individual Capacity from the First Amended Complaint (#17) is DENIED.

IT IS FURTHER ORDERED that the Motion to Extend Time (#22) is GRANTED.

Dated this 10th day of July, 2013.

_____
United States District Judge